MCCORRISTON MILLER MUKAI MACKINNON LLP

RANDALL K. SCHMITT           #3752-0
SABRINA N. GOUVEIA           #11814-0
500 Ala Moana Boulevard
Five Waterfront Plaza, 4th Floor
Honolulu, Hawai'i 96813
Telephone No.: (808) 529-7300
Facsimile No.: (808) 524-8293
Email: schmitt@m4law.com;
       sgouveia@m4law.com

Attorneys for Plaintiff
AUTHENTICITY CO. LTD.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| AUTHENTICITY CO. LTD., | Case No. 1:24-cv-00322 |
|---|---|
| Plaintiff, | COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS |
| vs. | |
| PACREP LLC; THE RITZ-CARLTON HOTEL COMPANY, L.L.C.; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and DOE GOVERNMENTAL ENTITIES 1-10, | |
| Defendants. | |

## COMPLAINT

Plaintiff AUTHENTICITY CO. LTD ("***Plaintiff***"), by and through its

attorneys, McCorriston Miller Mukai MacKinnon LLP, respectfully states the

#766247v1

following as its Complaint against Defendants PACREP LLC ("*PACREP*"); THE RITZ-CARLTON HOTEL COMPANY, L.L.C. (the "*Ritz-Carlton*"); JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and DOE GOVERNMENTAL ENTITIES 1-10 (hereinafter collectively, "*Defendants*") as follows:

## THE PARTIES

1. Plaintiff is a Foreign (Japanese) Corporation with its principal place of business in Japan.

2. Plaintiff used to be known as EKYT CO., LTD., but on May 12, 2023, changed its name to AUTHENTICITY CO. LTD.

3. Plaintiff owns the subject real property that is located at the Ritz-Carlton Residences, Waikiki Beach, located at 383 Kalaimoku Street, Honolulu, Hawaiʻi 96815, specifically, Unit PH-H ("*Penthouse*" or "*Property*").

4. The Ritz-Carlton Residences is a 5-star hotel associated with one of the most storied names in hoteliery and recognized worldwide for its level of service and amenities.

5. Upon information and belief, PACREP is a Hawaiʻi registered Limited Liability Company with its principal place of business in Los Angeles, California.

6. Upon information and belief, Ritz-Carlton is a Hawaiʻi registered Limited Liability Company with its principal place of business in Bethesda, Maryland.

7. Defendants JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and DOE GOVERNMENTAL ENTITIES 1-10 (jointly and severally referred to as "**Doe Defendants**"), are sued herein under fictitious names for the reason that their true names, identities, and/or responsibilities to Plaintiff are currently unknown except that they were in some manner involved in the conduct alleged herein. Plaintiff prays for leave to insert herein their true names, identities, capacities, acts and/or omissions, and/or responsibilities when the same are ascertained.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.00.

9. Venue is proper in the State of Hawaiʻi under 28 U.S.C. § 1391(b)(2) because the subject Property is situated in this district, the contract and related agreements for the Property were made in this district, and a substantial part of the events or omissions giving rise to this action occurred in this district.

## FACTUAL BACKGROUND

10. This case relates to design and construction defects in and around the Penthouse which is owned by Plaintiff.

11. PACREP was and is the developer for the Ritz-Carlton Residences and sold the Property to Plaintiff on January 15, 2016.

12. The Ritz-Carlton is responsible for managing the Property.

13. The Ritz-Carlton Residences is renowned for its luxury and exclusivity, having been awarded the title of Best Hotel in Hawai'i by Condé Nast Traveler in 2023.

14. The Ritz-Carlton Residences is managed by the Ritz-Carlton.

15. The Property is a one-of-a-kind luxury residence with an unobstructed ocean view and several unique amenities including a private pool and a large, secluded rooftop deck.

16. In or about March 2021, Plaintiff began noticing leaks in and around the Penthouse including but not limited to leaks emanating from the roof area and showing up on the interior walls of the Penthouse residence itself.

17. In or about March 2021, Plaintiff notified the Ritz-Carlton of these issues.

18. On or around July 13, 2021, the Ritz-Carlton removed the pool deck on the Property to perform an initial investigation of the water leakage.

19. During the summer of 2021, the Ritz-Carlton performed investigations by removing portions of the drywall in the Penthouse to investigate the water leakage further.

20. Upon information and belief, on October 15, 2021, the Ritz-Carlton attempted to reinstall the pool deck, but these efforts were inadequate as the leaks continued.

21. On October 19, 2021, the Ritz-Carlton replaced the wallpaper inside the Penthouse residence that was damaged by water leakage.

22. The Ritz-Carlton and/or PACREP performed little destructive investigations on the Property to determine the exact source of the water intrusion.

23. Cosmetic attempts by the Ritz-Carlton and/or PACREP made it appear that the leakage issue had been remediated, but these measures were ineffective in identifying and correcting the underlying water intrusion problems.

24. On December 8, 2021, the Ritz-Carlton informed Plaintiff that the Penthouse experienced a significant water leakage dripping down the walls inside the residence.

25. That same day, the Ritz-Carlton suggested that the Penthouse should not be occupied until and unless the source of the leaks was determined and repaired.

26. Immediately thereafter, the Penthouse was isolated, and furnishings were moved to permit ongoing investigation of the problems.

27. This unusable situation and the leaks continue to this day with the Penthouse having been essentially unusable since the first notice of the interior water leaks.

28. Plaintiff engaged Trinity ERD ("*Trinity*") to investigate the ongoing leaks in the Penthouse.

29. On July 7, 2022, Trinity personnel visited the Penthouse to inspect the existing conditions.

30. On January 20, 2023, Trinity released a comprehensive report of the defective conditions observed at the Penthouse, which are further outlined in the immediately following section.

31. Around October 2022, PACREP retained HCA Consulting Group International ("*HCA*") to evaluate the damage to the Penthouse from the water intrusion.

32. On October 21, 2022, HCA announced that additional testing and analysis would be necessary to verify the source of the water intrusion.

33. On May 18, 2023, HCA released its planned scope of repairs and the associated estimate for the costs to remediate the Penthouse.

**Construction and/or Design Defects**

34.     As identified by various construction and design consultants, there are significant design and/or construction defects that have caused multiple points of water entry that currently exist at the Property. These include but are not limited to the following:

a. Water intrusion has compromised the interior of the Penthouse on both the first and second floors, which renders the Penthouse uninhabitable.

b. The Property lacks a Hydrodrain drainage mat, which is essential to allow water to pass unobstructed to the deck drains. The missing drainage mat obstructs the flow of water and results in ponding water.

c. Drainage systems on the rooftop decks are severely impeded, contributing to ineffective water management.

d. The drainage paths at the partitions and deck support walls have incomplete or discontinuous waterproofing.

e. An inadequate slope for drainage has resulted in significant water ponding, exacerbating damage to the Property.

f. The overflow scuppers at the rooftop deck are improperly sealed or capped, which is causing the wood support system for the deck assembly to deteriorate.

g. There are incomplete or missing waterproofing elements at the partition walls between units at the rooftop deck which include missing door seals, flashings, and maintenance hatch/door through the partition walls.

h. There are incomplete or missing flashings at the concrete to framed wall transition at the partition wall between units at the rooftop deck, which are essential waterproofing elements.

i. There are incomplete or missing flashings at the transition from the exterior partition wall to the interior wall, which are essential waterproofing elements.

j. The absence of flashings allows water to intrude into wall cavity areas where flashings are also missing.

k. These identified points of water entry resulted in water flowing to the interior.

l. Elevated moisture levels have caused wallpaper in the Penthouse to delaminate, further evidencing the extent of water damage.

35. Construction and design consultants recommend that the water entry points be remediated to ensure that water is directed to drainage paths.

**Remedial Repair Efforts and the CRA Process**

36. PACREP and/or the Ritz-Carlton have had more than enough time to remediate the water damage to the Penthouse since the problems were first noticed in 2021.

37. Plaintiff has fulfilled its obligations under the Hawaiʻi Contractor Repair Act ("**CRA**") in § 672E of the Hawaiʻi Revised Statutes ("**HRS**"), which requires the Plaintiff to provide PACREP with notice of the claim, an appropriate investigation period, and a final phase where the contractor either fixes the defects to the Plaintiff's satisfaction or the parties agree to a settlement.

38. On February 17, 2023, Plaintiff provided a Notice of Claim to PACREP pursuant to the CRA Process.

39. The notice and investigation phases required by the CRA Process were completed by the end of December 2023.

40. Trinity and PACREP's contractors have identified the scope of work to be completed, however, work has still not started to repair the defects.

41. As of the date of the filing of this Complaint, PACREP has not proposed any meaningful settlement nor rectified the defects.

42. The Penthouse continues to have leaks and remains uninhabitable.

43. On June 26, 2024, Plaintiff provided PACREP's counsel with notice that the CRA Process had terminated, and that Plaintiff would move forward with other remedies.

## Loss of Use Analysis

44. Due to the significant construction defects associated with the Penthouse, Plaintiff has suffered loss of use of the Property and has been unable to reside in or rent the Property for its intended high-end use.

45. Plaintiff has suffered significant financial losses due to the inability to use the Penthouse, including lost rental income for the years 2021, 2022, 2023, and 2024.

46. Additionally, the ongoing uninhabitability has precluded Plaintiff from leveraging the Penthouse for any other profitable ventures or uses.

47. Plaintiff has suffered significant financial loss due to the uninhabitability of the Penthouse and has incurred tremendous expenses without being able to enjoy the luxury residence.

48. Plaintiff incurred additional living expenses while the Property remained uninhabitable, and repairs were delayed.

49. The value of the Property has depreciated due to the unresolved construction design defects.

50. The impact of the construction defects on the Penthouse is ongoing, with continuous expenses anticipated for maintenance and potential further repairs.

51. The prolonged nature of these defects has resulted in significant financial losses amounting to several million dollars at least.

52. Plaintiff will continue to incur additional costs and losses until the defects are fully addressed and the Property is restored to its promised condition.

## COUNT I – BREACH OF CONTRACT (PACREP)

53. Plaintiff restates and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

54. The Indenture between PACREP and Plaintiff executed on January 15, 2016, constitutes a written and enforceable contract (the "*Contract*").

55. Plaintiff has satisfied all the conditions required under the Contract.

56. Plaintiff has claims against PACREP for the damages arising from significant and pervasive construction defects, as evidenced by comprehensive inspections and reports.

57. These significant and pervasive defects amount to a material breach of the Contract.

58. PACREP has breached its obligations by failing to rectify the numerous identified defects despite being notified and given multiple opportunities to correct its substandard work as required by industry standards.

59. PACREP materially breached the Contract by not addressing the critical construction defects that compromise the structural integrity and usability of the Property, including but not limited to improper waterproofing, inadequate drainage systems, and substandard construction techniques.

60. Due to PACREP's breach of the Contract, Plaintiff has been and continues to be deprived of the full enjoyment of its luxury Penthouse that meets its needs and objectives.

61. As a direct, proximate, and foreseeable result of PACREP's material breach of the Contract, Plaintiff has suffered damages in an amount to be proven at trial.

**COUNT II – NEGLIGENT MISREPRESENTATION (PACREP)**

62. Plaintiff restates and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

63. PACREP misrepresented the quality and condition of the Property, including assurances of defect-free construction and adherence to high standards of workmanship.

64. These misrepresentations were critical factors in the Plaintiff's decision to purchase the Penthouse.

65. PACREP owed Plaintiff a duty to accurately represent the state of the Property and to adhere to professional and contractual obligations.

66. PACREP's failure to accurately represent the state of the Property and to adhere to professional and contractual obligations constitutes a breach of both the terms of the Contract and the industry's standard of care.

67. PACREP breached its duty owed to Plaintiff by providing false or misleading information regarding the quality and condition of the Property, failing to disclose known defects, and neglecting to perform necessary inspections and full and complete timely repairs.

68. Plaintiff reasonably relied on PACREP's assurances and representations, believing the Property to be free of defects and constructed to the promised standards.

69. Plaintiff's reliance was justified given PACREP's professional role and the contractual obligations along with the relationship with the Ritz-Carlton brand and reputation.

70. As a direct, proximate, and foreseeable result of PACREP's negligent misrepresentations and failures, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT III – BREACH OF CONTRACT (RITZ-CARLTON)

71. Plaintiff restates and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

72. By its terms, the Condominium Management Agreement ("*CMA*") executed by the Ritz-Carlton and the Association of Unit Owners ("*AOUO*") constitutes a valid and enforceable contract.

73. The AOUO is the governing body of homeowners, who own undivided fractional interests in the Property's common elements.

74. To the extent that representations and warranties made by the Ritz-Carlton in the CMA were not assigned to Plaintiff, Plaintiff is a third-party beneficiary in the CMA or CMA-related documents as the Ritz-Carlton is responsible for managing the daily operations of the Property.

75. The Ritz-Carlton has a contractual obligation under the CMA to act as a reasonably prudent manager in performing its management services.

76. The Ritz-Carlton breached its obligation by failing to deliver the Property in a habitable condition free of significant construction defects.

77. The Ritz-Carlton breached its duties by failing to engage essential consultants to accurately identify the underlying source of the water damage, opting instead for superficial cosmetic fixes that concealed but did not resolve the issues.

78. The Ritz-Carlton breached its obligation by neglecting Plaintiff and failing to remediate the damage to the Penthouse for multiple years.

79. Plaintiff has the right to rely on the Ritz-Carlton as Property Manager, and Plaintiff paid a premium for the Property, expecting the luxury standard represented by the Ritz-Carlton.

80. The Ritz-Carlton failed to address the construction defects in a timely and effective manner, leading to ongoing water damage and uninhabitability of the Penthouse.

81. As a direct and proximate result of these material breaches by the Ritz-Carlton, Plaintiff has suffered damages in an amount to be proven at trial.

**COUNT IV – NEGLIGENT MISREPRESENTATION (RITZ-CARLTON)**

82. Plaintiff restates and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

83. The Ritz-Carlton owed Plaintiff a duty, both under the CMA and the industry standard of care, to act as a reasonably prudent manager.

84. The Ritz-Carlton breached its duty by being unreasonable.

85. The Ritz-Carlton negligently misrepresented itself, forming its global brand on the promise of exceptional luxury, service, and maintenance, widely advertising itself as the epitome of hotel and property management excellence.

86. The Ritz-Carlton made such misrepresentations with the intention that Plaintiff would rely upon them.

87. The Ritz-Carlton misrepresented its ability to maintain and manage the Property to these advertised high standards of quality and care.

88. Plaintiff did in fact reasonably rely upon the Ritz-Carlton's misrepresentations to Plaintiff's detriment when it purchased the multimillion-dollar Penthouse.

89. Plaintiff expected the Property to be maintained and managed in line with the Ritz-Carlton's advertised reputation for excellence and luxury.

90. This misrepresentation was a crucial factor in Plaintiff's decision to purchase the one-of-a-kind Penthouse.

91. The Ritz-Carlton also misrepresented the state of the Property's condition, assuring Plaintiff that water leakage issues were being corrected when, in fact, only superficial cosmetic efforts were made, failing to address the underlying problems.

92. As a direct, proximate, and foreseeable result of the Ritz-Carlton's negligent misrepresentations and failures, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT V – NEGLIGENCE (RITZ-CARLTON)

93. Plaintiff restates and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

94. The Ritz-Carlton, in its capacity as Property manager, owed Plaintiff duties to act with reasonable care and prudence in managing the Property.

95. The Ritz-Carlton breached its duties by being unreasonable.

96. The Ritz-Carlton's breach of its duties actually and proximately caused Plaintiff to suffer damages.

97. Plaintiff is entitled to an award of damages from the Ritz-Carlton in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered in its favor and against the Defendants as follows:

1. Judgment in favor of Plaintiff and against the Defendants in an amount to be proven at trial but in an amount which is currently estimated to exceed $10,000,000.

2. For monetary damages related to the defective work on the Property including the return of all funds paid for the defective work, the cost of all demolition and repair costs, and all related costs and fees including experts' fees, additional construction and interest costs;

3. For special, incidental, and consequential damages in amounts to be proven at trial such damages to include but not be limited to Loss of Use and

Diminution in Value of the Property plus the costs of maintaining the Property (e.g., maintenance fees paid to the AOUO);

    4.    For punitive or exemplary damages (if supporting facts are discovered during the course of the litigation), in an amount to be proven at trial;

    5.    For its attorneys' fees, costs and expenses; and

    6.    For such other and further relief as the Court may deem just and equitable under the circumstances.

DATED: Honolulu, Hawaiʻi, July 30, 2024.

/s/ *Randall K. Schmitt*
RANDALL K. SCHMITT
SABRINA N. GOUVEIA
Attorneys for Plaintiff
AUTHENTICITY CO. LTD.